| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Crossbay Seashell Fish Market, Inc.** |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF NEW YORK |
| Case number (if known) | **21-40951** |

☐ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11     02/20

<u>Crossbay Seashell Fish Market, Inc.</u> 's First Plan of Reorganization, Dated July 12, 2021

### Background for Cases Filed Under Subchapter V
**A. Description and History of the Debtor's Business**

The Debtor is a New York Corporation. Since 1992, the Debtor has been engaged in the operation of a Wholesale/Retail Fresh Fish Sales establishment located in Howard Beach, New York.

Prior to December 2013, the Debtor was a party to a collective bargaining agreement ("CBA") with the Leather Goods, Handbags and Novelty Workers Local 1 with respect to the remittance of certain contributions to the Joint Retirement Fund on behalf of the employees covered by the CBA

Although the Fund terminated shortly thereafter, in accordance with ERISA, and the Debtor provided notice of such termination to the Fund and its employees, the Debtor was still subject to pay certain "recalculated" liabilities to the Fund including a withdrawal liability and a continuing obligation to the Fund.

By 2019, the Debtor's liability ballooned to in excess of $780,000.00 with interest thereon. On or about March 2019, the Fund commenced litigation in the USDC-EDNY to enforce its rights under the CBA and ERISA. The Debtor defaulted in the action, and on January 3, 2020, a judgment was entered against the Debtor in the amount of $850,441.65.

Earlier this year, the Fund commenced enforcement proceedings against the Debtor, thus precipitating the filing of this Chapter 11 case.

Since the filing, the Debtor has successfully negotiated a compromise and settlement of the judgment in the amount of $36,000.00 (the "Settlement Sum") which shall be paid under the terms of this Chapter 11 Plan. The Settlement Sum is greater than the amount this creditor would have received in liquidation, and shall be paid from the Debtor's ongoing operations over a term of 36 months in compliance with 11 U.S.C. Section 1191.

    **B. Liquidation Analysis**
    To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit <u>A</u>.

    **C. Ability to make future plan payments and operate without further reorganization**
    The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

    The Plan Proponent has provided projected financial information as Exhibit <u>B</u>.

    The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of a minimum of $2,000.00 per month<u>.</u>.

    The final Plan payment is expected to be paid on <u>**or before the first day of the 36th month after the Effective Date of the Plan**</u>.

    **You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of **Crossbay Seashell Fish Market, Inc.** (the *Debtor*) from [Specify sources of payment, such as an infusion of capital, loan proceeds, sale of assets, cash flow from operations, or future income].

This Plan provides for:     <u>**0**</u> classes of priority claims;
                              <u>**1**</u> classes of secured claims;
                              <u>**1**</u> class of non-priority unsecured claims; and
                              <u>**1**</u> class of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately four (4) cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have**

Debtor  **Crossbay Seashell Fish Market, Inc.**                                    Case number (*if known*) **21-40951**
         Name

an attorney, you may wish to consult one.)

### Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | Class 1 | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)). |
| 2.02 | Class 2 | On April 16, 2021, an Order was entered by the Court setting June 21, 2021 as the last date for secured creditors to file claims in this Chapter 11 case. There has been one secured claim filed in this case - a secured claim by M&T Bank relating to payments on a 2021 Dodge Van used in the operation of the Debtor's business. The Debtor was current at the time of filing and shall continue to remit payments to this creditor directly outside of this Chapter 11 Plan. |
| 2.03 | Class 3 | All non-priority unsecured claims allowed under § 502 of the Code. On April 16, 2021, an Order was entered by the Court setting June 21, 2021 as the last date for secured creditors to file claims in this Chapter 11 case. One non-priority unsecured claim has been filed in this Chapter 11 case - the claim of the Joint Retirement Fund in the amount of $866,959.35. This creditor has agreed to accept the sum of $36,000.00, without interest thereon, to be paid in 36 monthly installments, each in the sum of $1,000.00 commencing on the Effective Date of this Plan. |
| 2.04 | Class 4 | Equity interests of the Debtor. |

### Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | Unclassified claims | Under section § 1123(a)(1), administrative expense claims, ["gap" period claims in an involuntary case allowed under § 502(f) of the Code,] and priority tax claims are not in classes. |
| 3.02 | Administrative expense claims | Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid on the effective date. |
| | | Administrative claimants consists of (a) professional fees due and owing to Debtor's counsel, and (b) any professional fees which may be due and owing to Heidi Sorvino, Esq., the Subchapter V Trustee assigned to this case. It is estimated that the professional fees due to Richard S. Feinsilver, Esq., Debtor's counsel will be in the approximate sum of $7,500.00, which was paid as a retainer, subject to the approval of the Court. The Debtor also estimates that as of July 12, 2021, its post petition administrative liabilities shall total approximately less than $1,000.00, including a provision for possible possible administrative tax obligations. In addition, the Debtor estimates legal fees of $2,500.00 to Ms. Sorvino, subject to the entry of an appropriate Order by the Court. Any approved fees shall be paid to Ms. Sorvino within 10 days of the entry of the Order by the Court. |
| 3.03 | Priority tax claims | On April 16, 2021, an Order was entered by the Court setting October 8, 2021 as the last date for governmental units to file priority tax claims in this Chapter 11 case. As of this date, three (3) priority tax claims have been filed in this cases the claim of the Internal Revenue Service in the amount of $9551.85; the claim of the NYS Department of Labor in the amount of zero ($.00) and the claim of the NYC Department of Finance in the amount of 3430.75.<br>(a) Internal Revenue Service - The claim filed by the Internal Revenue Service is an estimated claim based upon the non-filing and/or processing of various pre-petition payroll tax returns. The returns for the subject periods were filed and copies have been provided to the Internal Revenue Service. It is anticipated that the claim of the Internal Revenue Service shall be reduced to an amount of no greater than $1,000.00. This sum shall be paid in cash on th eEffective Date of the Plan.<br>(b) New York State Department of Labor - In the event that the NYS Department of Labor files an amended claim, any allowed amount of such claim shall be paid in cash on the Effective Date of the Plan<br>(c) NYC Department of Finance - The claim filed by the NYC Department of Finance is an estimated claim based upon the non-filing and/or processing of various pre-petition tax returns. The returns for the subject periods were filed and copies have been provided to the NYC Department of Finance. It is anticipated that the claim of the NYC Department of Finance shall be reduced to an amount of no greater than $1,000.00. This sum shall be paid in cash on the Effective Date of the Plan. |
| 3.04 | Statutory fees | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |
| 3.05 | Prospective quarterly fees | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code |

### Article 4: Treatment of Claims and Interests Under the Plan

4.01    Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** | ☐ Impaired | The are no Priority Claims in this case other than those |

| | | | |
|---|---|---|---|
| | excluding those in Article 3 | ☑ Unimpaired | discussed in Article 3 above. |
| | Class 2 – **Secured claim of** [*Insert name of secured creditor.*] | ☐ Impaired ☑ Unimpaired | One secured claim has been filed in this Chapter 11 case - the claim of M&T Bank relating to payments on a 2021 Dodge Van used in the operation of the Debtor's business. The Debtor was current at the time of filing and shall continue to remit payments to this creditor directly outside of this Chapter 11 Plan |
| | Class 3 – **Non-priority unsecured creditors** | ☑ Impaired ☐ Unimpaired | One non-priority unsecured claim has been filed in this Chapter 11 case - the claim of the Joint Retirement Fund in the amount of $866,959.35. This creditor has agreed to accept the sum of $36,000.00 in compromise and settlement of its claim, without interest thereon, to be paid in 36 monthly installments, each in the sum of $1,000.00 commencing on the effective date of the Plan. |
| | Class 4 - **Equity security holders of the Debtor** | ☐ Impaired ☑ Unimpaired | The Debtor shall retain the residual property of the Estate upon completion of its plan payments. |

### Article 5: Allowance and Disallowance of Claims

| 5.01 | Disputed Claim | A *disputed claim* is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: |
|---|---|---|
| | | (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or |
| | | (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | Delay of distribution on a disputed claim | No distribution will be made on account of a disputed claim unless such claim is allowed [by a final non-appealable order]. |
| 5.03 | Settlement of disputed claims | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

### Article 6: Provisions for Executory Contracts and Unexpired Leases

| 6.01 | Assumed executory contracts and unexpired leases | (a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date: None |
|---|---|---|
| | | (b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date. |
| | | A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan. |

### Article 7: Means for Implementation of the Plan

The Plan is based on the continued operation by the Debtor of its business both prior to and subsequent to the confirmation of this Chapter 11 Plan. The debtor's payments to its Class 3 creditor shall be made from the Debtor's ongoing net operating income of the Debtor.

Notwithstanding the impact that the Covid-19 Crisis previously had on the Debtor's business fthe Debtor has shown the ability to meet its post petition obligations on a regular basis since filing and has sufficient cash on hand to remit both its ongoing payments and any lump sum payments due of the Effective Date of this Plan.

The Debtor's Operating Reports for the periods from the Petition Date to June 2021 are on file with the Bankruptcy Court.

### Article 8: General Provision

| 8.01 | Definitions and rules of construction | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |
|---|---|---|
| | | [Insert additional definitions if necessary]. |

| Debtor | Crossbay Seashell Fish Market, Inc. | Case number (if known) 21-40951 |
|---|---|---|
| | Name | |

| 8.02 | Effective Date | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
|---|---|---|
| 8.03 | Severability | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | Binding Effect: | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | Captions | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | Controlling Effect | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of **New York** govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan |
| 8.07 | Corporate Governance | Not applicable |
| 8.08 | Retention of Jurisdiction | The Bankruptcy Court shall retain and have exclusive jurisdiction of and over all matters arising under, arising out or relating to the following:<br>(a) to determine any and all objections to the allowance of Claims;<br>(b) to determine any and all pending applications for the rejection or assumption of executory contracts or unexpired leases to which the Debtor is a party or with respect to which it may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;<br>(c) to determine any and all applications, adversary proceedings, and contested or litigated matters, concerning any claims of the Debtor or Reorganized Debtor preserved pursuant to the Plan and/or to set aside liens or encumbrances and/or to recover any assets or damages to which the Debtor may be entitled under applicable provisions of the Bankruptcy Code or other Federal, State or Local Law;<br>(d) to consider any modifications of the Plan, any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;<br>(e) to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan<br>(f) to consider and act on the compromise and settlement of any Claim against or cause of action by or against the Estate;<br>(g) to issue such orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Bankruptcy Code.<br>(h) to fix the allowance of compensation to all professionals; and<br>(i) to determine such other matters which may be set forth in the Confirmation Order or which may arise in connection with the Plan, including, but not limited to, extending deadlines and time limits provided in the Plan. |

### Article 9: Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or

(ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### Article 10: Other Provisions

**Not Applicable**

| Debtor | Crossbay Seashell Fish Market, Inc. | Case number (*if known*) | 21-40951 |
|---|---|---|---|
| | Name | | |

Respectfully submitted,

**X** **/s/ Pasquale Marotta  7/12/2021**
[Signature of the Plan Proponent]

**Pasquale Marotta**
[Printed name]

**X** **/s/ Richard S Feinsilver 7/12/2021**
[Signature of the Attorney for the Plan Proponent]

**Richard S Feinsilver**
[Printed name]

## CROSSBAY SEASHELL FISH MARKET INC.
## LIQUIDATION ANALYSIS
(as of July 12, 2021)

### ASSETS

Estimated
Market Value/Liquidation Value

| | | | |
|---|---|---|---:|
| A. | Petty Cash on hand | $ | 200.00 |
| B. | Balance - DIP Operating Acct | | 75000.00 |
| C. | Accounts Receivable (100% value) | | 10000.00 |
| D. | Inventory (Non-Perishable) | | 1000.00 |
| E. | Vehicles, Fixtures, Equipment | | 31000.00 |

TOTAL ASSETS                                        $ 117200.00

### LIABILITIES

### ADMINISTRATIVE AND PRIORITY
### EXPENSES OF CHAPTER 7 LIQUIDATION

| | | | |
|---|---:|---:|---|
| Subchapter V Trustee Fee | $ | 2500.00 | (Estimated) |
| Chapter 7 Trustee Fee (3%) | $ | 2500.00 | (Estimated) |
| Chapter 7 Professional Fees | $ | 5000.00 | |
| Chapter 11 Professional Fees | $ | .00 | |
| Post Petition Admin Claims | | | |
|    - Post Petition Accts Payable | | | |
|      (80% of prior month's sales) | $ | 60000.00 | |
|    - Misc (Rent/Utilities) | $ | 5000.00 | |

TOTAL ADMINISTRATIVE EXPENSES            $    75000.00

### SECURED CLAIMS

M&T Bank (Auto Loan)                        $    18000.00 (Estimated)

NET AVAILABLE FOR GENERAL
UNSECURED CREDITORS                         $    24200.00

EXHIBIT B

Crossbay Seashell Fish Market, Inc 21-40951-nhl   Updated 7/12/2021

| | Sept 2021 | Oct 2021 | Nov 2021 | Dec 2021 | Jan 2022 | Feb 2022 | March 2022 | April 2022 | May 2022 | June 2022 | July 2022 | August 2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Bank Balance | 85000 | 82941 | 85882 | 90823 | 95764 | 97705 | 99646 | 101587 | 105538 | 110489 | 113430 | 116371 |
| | | | | | | | | | | | | |
| Gross Sales | 145000 | 145000 | 160000 | 160000 | 140000 | 140000 | 140000 | 160000 | 160000 | 150000 | 150000 | 150000 |
| Cost of Goods Sold | 123000 | 123000 | 136000 | 136000 | 119000 | 119000 | 119000 | 136000 | 136000 | 127500 | 127500 | 127500 |
| Gross Profit | 22000 | 22000 | 24000 | 24000 | 21000 | 21000 | 21000 | 24000 | 24000 | 22500 | 22500 | 22500 |
| | | | | | | | | | | | | |
| Rent | 5583 | 5583 | 5583 | 5583 | 5583 | 5583 | 5583 | 5583 | 5583 | 5583 | 5583 | 5583 |
| Utilities | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2500 | 2500 | 2500 |
| Insurance | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 |
| Net Salaries | 4750 | 4750 | 4750 | 4750 | 4750 | 4750 | 4750 | 4750 | 4750 | 4750 | 4750 | 4750 |
| Payroll Taxes | 1250 | 1250 | 1250 | 1250 | 1250 | 1250 | 1250 | 1250 | 1250 | 1250 | 1250 | 1250 |
| Refuse Removal | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 |
| Merchant Acct Fees | 950 | 950 | 950 | 950 | 950 | 950 | 950 | 950 | 950 | 950 | 950 | 950 |
| Auto Loan | 326 | 326 | 326 | 326 | 326 | 326 | 326 | 326 | 326 | 326 | 326 | 326 |
| Travel/Delivery | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Misc | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Total Expenses | 18059 | 18059 | 18059 | 18059 | 18059 | 18059 | 18059 | 18059 | 18059 | 18559 | 18559 | 18559 |
| | | | | | | | | | | | | |
| Net Profit | 3941 | 3941 | 5941 | 5941 | 2941 | 2941 | 2941 | 5941 | 5941 | 3941 | 3941 | 3941 |
| Ch 11 Plan Payment | 6000** | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 |
| Closing Bank Balance* | 82941 | 85882 | 90823 | 95764 | 97705 | 99646 | 101587 | 105538 | 110489 | 113430 | 116371 | 119312 |

* Includes provision for payment of rolling accounts payable - average of 15-30 days net.
** Includes estimated payments due on effective date of plan.